**Robert SAWYER and Kelly Sawyer, Plaintiffs,**

**v.**

**Paul WIGHT a/k/a "The Giant" and a/k/a "Big Show", Marriott International, Incorporated, d/b/a Long Island Marriott Hotel and Conference Center and World Championship Wrestling, Incorporated a/k/a "WCW", Defendants.**

**No. 00–CV–6502TCPMLO.**

United States District Court, E.D. New York.

Feb. 21, 2002.

Michael C. Levine, Joachim, Flanzig, Frommer, Flanzig & Cerrato, Mineola, NY, for Robert Sawyer, kelly Sawyer, plaintiffs.

William G. Scher, Garbarini & Scher, P.C., New York, NY, for Marriott Intern., Inc., defendant.

William G. Scher, Garbarini & Scher, P.C., New York, NY, Brian J. Davis, E. Meadow, NY, for Paul Wight, defendant.

## MEMORANDUM AND ORDER

PLATT, District Judge.

Defendant Marriott International, Incorporated d/b/a Long Island Marriott Hotel

and Conference Center ("Marriott") moves pursuant to Rule 56 of the Federal Rules of Civil Procedure for summary judgment of Plaintiffs Robert and Kelly Sawyer's ("Sawyer") negligence claim against it. Defendant Paul Wight ("Wight") also moves pursuant to Rule 56 of the Federal Rules of Civil Procedure for summary judgment of Sawyer's negligence claim against him. Sawyer cross-moves pursuant to Rule 56 of the Federal Rules of Civil Procedure for summary judgment of Wight's counterclaim for assault and battery.

For the reasons stated below: (1) Marriott's motion is DENIED; (2) Wight's motion is GRANTED; and (3) Sawyer's motion is GRANTED.

## BACKGROUND

This is a tort case that sounds in negligence. Jurisdiction is predicated on diversity.

Wight filed a statement of material fact for which he feels there is no genuine issue for trial pursuant to Local Civil Rule 56.1 ("56.1 Statement") in support of his Motion for Summary Judgment. Marriott also filed a 56.1 Statement in support of its Motion for Summary Judgment. Neither Wight nor Marriott filed counter–56.1 Statements in opposition to Sawyer's Cross–Motion for Summary Judgment.

Sawyer filed a counter–56.1 Statement in opposition to Wight's and Marriott's respective Motions for Summary Judgment. Sawyer neglected to file a 56.1 Statement in support of his Motion for Summary Judgment though. Because the parties' 56.1 Statements are insufficient to develop the factual record, the following factual rendition comes from a variety of sources, including a security surveillance tape from the Marriott lobby on the night in question.

## A. Factual Background

Sawyer is "gangly a six-foot-six, 225 pound contractor" who is a citizen of New York. (Scher Reply Aff. Ex. 1.) Wight is a "six-foot-eleven, 420 pound behemoth professional wrestler" who is a citizen of Georgia. (Scher Reply Aff. Ex. 1.) Marriott is a Delaware corporation with its principal place of business in Washington, D.C. (Notice of Removal at 2.)

The events leading to this motion began in the waning hours of June 15, 1998, following a wrestling match that had taken place in Nassau Coliseum earlier that evening. (Levine Aff. in Supp. ¶ 6; Levine Aff. in Opp. ¶ 5.) Around 12:15 A.M. on January 16, 1998, Wight approached the Marriott front desk in the hotel lobby. (Levine Aff. in Opp. ¶¶ 12, 17, Ex. G; Scher Aff. ¶ 9.) A large crowd had been gathering in the hotel lobby for more than one hour before Wight arrived. (Levine Aff. in Opp. ¶¶ 12, 17, Ex. G; Scher Aff. ¶ 9.)

The crowd in the hotel lobby was sufficiently unruly that Marriott security personnel observing it requested permission to call the police several times. (Pl.'s 56.1 Stmnt. ¶ 2; Levine Aff. in Opp. ¶¶ 13, 15.) Marriott nonetheless contends that everyone in the lobby, except Sawyer, was "well-behaved and completely non-threatening." (Marriott's 56.1 Stmnt. ¶ 2.)

In any case, Sawyer walked up to Wight at the front desk immediately after Wight entered the lobby and began passing derogatory remarks to him. (Levine Aff. in Opp. Ex. G; Scher Aff. ¶ 9.) Wight initially ignored Sawyer's heckling and turned his back on Sawyer. (Levine Aff. in Opp. Ex. G; Scher Aff. ¶ 9.)

Sawyer's harassment crescendoed though. He chanted "the Giant sucks, Nash[1] is great" and executed a "degenera-

---

**1.** Kevin Nash is a professional wrestler who competed as "Diesel" and as part of the

"nWo." Seth Mates, *Interview With Kevin*

tion X" in Wight's direction.[2]. (Scher Aff. ¶ 9.) Wight's patience eventually ran out, and the wrestler turned to face Sawyer who was still several feet away. (Levine Aff. in Opp. Ex. G; Scher Aff. ¶ 9.)

Wight advanced on Sawyer, and Sawyer apparently lunged at Wight. (Marriott's Mem. in Supp. Mot. to Dismiss at 2.) Wight responded to Sawyer's advance by punching Sawyer once in the face.[3] (Levine Aff. in Opp. Ex. G; Scher Aff. ¶ 9.) Sawyer dropped from the punch, and Wight returned to the front desk. (Levine Aff. in Opp. Ex. G.)

## B. Procedural History

Following the aforementioned events, the Nassau County District Attorney's Office criminally prosecuted Wight in Nassau County District Court ("County Court") for allegedly violating New York Penal Law Section 120.00(1), Assault in the Third Degree. (Scher Reply Aff. Ex 1.) On March 10, 1999, Nassau County District Court Judge Thomas Feinman acquitted Wight on those charges. (Scher Reply Aff. Ex 1.) Judge Feinman ruled that while Wight had intentionally struck Sawyer and fractured his jaw, Sawyer was the initial aggressor, and Wight was therefore justified in employing physical force to defend himself. (Scher Reply Aff. Ex 1.)

Sawyer subsequently commenced this action in the Supreme Court of the State of New York, County of Nassau on October 24, 2000. (Scher Aff. Ex. 1.) On Octo-

ber 31, 2000, Marriott removed the action to this Court pursuant to 28 U.S.C. § 1441(a). Marriott predicated federal subject matter jurisdiction on diversity, alleging that "plaintiffs [sic] are residents of the County of Nassau, State of New York," that Marriott is "incorporated in Delaware with its principle place of business in Washington, D.C.," and that Wight is "a resident of Georgia." (Notice of Removal at 2.)

On November 13, 2000, Marriott answered the Complaint and asserted several affirmative defenses, including improper service of process. On January 29, 2001, Wight answered the Complaint and counterclaimed against Sawyer for assault and battery. Wight also cross-claimed against Marriott. Sawyer answered Wight's counterclaim on February 14, 2001.

On February 1, 2002, the parties appeared for oral argument on these motions. At that appearance, the Court *sua sponte* raised subject matter jurisdiction questions because Marriott's removal notice stated only Sawyer's and Wight's residencies and not their citizenships.[4] The parties eventually stipulated that when the action was commenced: (1) Sawyer was a citizen of New York; and (2) and Wight was a citizen of Georgia. The Court accordingly concluded that full diversity existed and that it has proper subject matter jurisdiction. The Court proceeded to hear oral argument and reserved decision.

*Nash, available at* http://www.wwf.com/news/headlines/1113961.

**2.** The degeneration X, an example of which may be seen on the Marriott security surveillance tape, involves "moving one's left arm over [one's] right arm with both hands down in an open fashion over one's crotch." (Scher Aff. ¶ 9; Levine Aff. in Opp. Ex. G.) The degeneration X does not involve physical contact with other persons.

**3.** That single strike was sufficient to fracture Sawyer's jaw. (Levine Aff. in Supp. ¶ 6.)

**4.** 28 U.S.C. § 1332(a)(1) requires diversity of citizenship and not merely diversity of residency. *See Lee v. Coss*, No. 99–7294, 1999 WL 1314741, *1, 1999 U.S.App. LEXIS 34302, at *2 (2d Cir. Dec. 29, 1999); *Canedy v. Liberty Mutual Ins. Co.*, 126 F.3d 100, 103 (2d Cir.1997).

## DISCUSSION

### A. Summary Judgment Standard

#### 1. Generally

Courts may grant summary judgment when the moving party demonstrates: (1) that there is no genuine issue of material fact for trial; and (2) that it is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Nat'l Union Fire Ins. Co. v. Stroh Cos.*, 265 F.3d 97, 103 (2d Cir.2001). On motions for summary judgment, courts must construe all facts and draw all inferences in favor of the non-moving party. *See Howley v. Town of Stratford*, 217 F.3d 141, 150–51 (2d Cir.2000).

Facts are material if they " 'might affect the outcome of the suit under the governing law.' " *Nat'l Union Fire Ins. Co.*, 265 F.3d at 103 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). Factual issues are genuine if " 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.' " *Id.* (quoting same); *Graham v. Long Island R.R.*, 230 F.3d 34, 38 (2000).

To survive a motion for summary judgment, the nonmoving party " 'must do more than simply show that there is some metaphysical doubt as to the material facts.' " *Dister v. Cont'l Group, Inc.*, 859 F.2d 1108, 1114 (2d Cir.1988) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). The nonmoving party must instead "make a showing sufficient to establish the existence of ... [the] element[s] on which ... [it] will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

#### 2. Local Civil Rule 56.1

In the Southern and Eastern Districts of New York, parties moving for summary judgment must submit 56.1 Statements.

LOCAL CIV. R. 56.1(a). Nonmoving parties must respond with separate statements of material fact for which they contend there is a genuine issue for trial. *Id.* 56.1(b). Any facts posited by the moving party that are not controverted by the nonmoving party are deemed admitted. *Id.* 56.1(c). Both parties must cite to admissible evidence following each statement of fact for that statement itself to be admissible. *Id.* 56.1(d).

The Second Circuit permits District Courts to grant summary judgment to moving parties on the basis of their uncontroverted 56.1 Statements. *See Millus v. D'Angelo*, 224 F.3d 137, 138 (2d Cir. 2000); *see also Gubitosi v. Kapica*, 154 F.3d 30, 31 n. 1 (2d Cir.1998) (reversing District Court's denial of summary judgment and accepting defendant's uncontested assertions). While District Courts are " 'not required to consider what the parties fail to point out' in their ... 56.1[S]tatements," they may discretionarily choose to search the record of their own accord. *See Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2nd Cir.2001) (quoting *Monahan v. New York City Dep't of Corrs.*, 214 F.3d 275, 292 (2d Cir.2000) (citations omitted)). However, there is no obligation to do so. *See id.*

The parties' 56.1 Statements are sparse and fail to indicate what factual issues do or do not warrant trial. Accordingly, the Court looks beyond the parties' 56.1 Statements so that it may develop a factual record on which to decide these motions. *See Holtz*, 258 F.3d at 73.

### B. Choice of Law

■ In diversity actions, Federal Courts apply the substantive law of the State in which they sit. *Quinn v. Teti*, No. 99–9433, 2000 WL 1616806, **1–2, 2000 U.S.App. LEXIS 27210, at *4–5 (2d Cir. Oct. 27, 2000); *Reilly v. Natwest Mkts.*

*Group Inc.*, 181 F.3d 253, 262 (2d Cir. 1999). Because this is a diversity action, this Court will apply New York State substantive law. *See Quinn*, 2000 WL 1616806, **1–2, 2000 U.S.App. LEXIS 27210, at *4–5; *Reilly*, 181 F.3d at 262.

## C. Marriott's Summary Judgment Motion

Marriott moves for summary judgment of Sawyer's negligence claim on grounds that Sawyer was the first aggressor and that he voluntarily fought Wight. Marriott contends that voluntary act constitutes a superceding cause that absolves Marriott of any potential liability.

Sawyer claims he was not the first aggressor and that he did not voluntarily engage in the altercation. He therefore argues that his participation in the fracas was not a superceding cause. The Court denies Marriott's Motion for Summary Judgment.

■ The elements of a negligence claim are: (1) duty; (2) breach; (3) causation; and (4) damages. *Denman v. Coppola Gen. Contr. Corp.*, 256 A.D.2d 1050, 683 N.Y.S.2d 617, 618 (N.Y.App.Div.1998). The primary disputes in this case involve Marriott's duty and causation.

### 1. Duty

■ Courts decide as a matter of law whether particular duties exist. *Darby v. Compagnie Nat'l Air France*, 753 N.E.2d 160, 162 (N.Y.2001); *Ellis v. Mildred Elley Sch., Inc.*, 245 A.D.2d 994, 667 N.Y.S.2d 86, 87 (N.Y.App.Div.1997). In New York, innkeepers have a duty to protect guests and patrons from reasonably foreseeable criminal attacks. *Rednour v. Hilton Hotels Corp.*, 283 A.D.2d 221, 724 N.Y.S.2d 739, 740 (N.Y.App.Div.2001); *Kahane v. Marriott Hotel Corp.*, 249 A.D.2d 164, 672

N.Y.S.2d 55, 56 (N.Y.App.Div.1998). Triers of fact decide whether an attack was reasonably foreseeable. *Kahane*, 672 N.Y.S.2d at 56.

■ Attacks may be reasonably foreseeable when the hotel or inn where the attack occurred was plagued by ambient crime. *Rednour*, 724 N.Y.S.2d at 740. However, attacks may not be reasonably foreseeable when the hotel provided adequate security or when the attack was directed specifically at the victim because of his own remarks. *Rednour*, 724 N.Y.S.2d at 740 (finding no duty to protect guest because: (1) hotel generally provided security; (2) guest had accused his attacker of being a prostitute; and (3) attack could not have been prevented except by "the fortuitous presence of a security guard stationed at the exact location of the attack"). Spontaneous altercations between patrons and guests are generally not foreseeable. *Lee v. Durow's Rest.*, 238 A.D.2d 384, 656 N.Y.S.2d 321, 322 (N.Y.App.Div.1997).

■ Marriott owed Sawyer a duty to protect him from the foreseeable criminal activities of third persons. *See Rednour*, 724 N.Y.S.2d at 740; *Kahane*, 672 N.Y.S.2d at 56. Whether Wight's attack on Sawyer was foreseeable is a matter for the jury to decide. *See Kahane*, 672 N.Y.S.2d at 56. Accordingly, summary judgment for Marriott is inappropriate because a jury must decide whether it breached the duty it owed to Sawyer.

Moreover, construing the facts and inferences in the light most favorable to Sawyer, *see Howley*, 217 F.3d at 150–51, Marriott may not have provided adequate security in its hotel lobby. *See Rednour*, 724 N.Y.S.2d at 740. Marriott had notice of its lobby's condition from its security guards, and that notice may have rendered this attack reasonably foreseeable.[5] *See*

---

**5.** This is particularly true in light of Marriott's experience with crowds of this nature (wrestling fans) and the general rowdiness that often unfolds in Marriott's lobby following events at Nassau Coliseum.

*id.* Accordingly, this altercation may not have been fortuitous or unexpected and summary judgment for Marriott is premature. *See Lee,* 656 N.Y.S.2d at 322.

### 2. Causation and Superceding Causes

■ To prove causation, plaintiffs must show that breach of a duty was both the cause in fact and proximate cause of their injury. *See Cygan v. New York,* 165 A.D.2d 58, 566 N.Y.S.2d 232, 233 (N.Y.App.Div.1991). A breach is the cause in fact of an injury if but for the breach, the injury would not have occurred. *Kadyszewski v. Ellis Hosp. Ass'n,* 192 A.D.2d 765, 595 N.Y.S.2d 841, 844 (N.Y.App.Div. 1993). A breach is the proximate cause of an injury if the breach was a substantial factor in causing the injury. *See Said v. Assaad,* 289 A.D.2d 924, 735 N.Y.S.2d 265, 267 (N.Y.App.Div. Dec. 21, 2001). Proximate causation is a factual question left to the fact finder. *Peter McKinnon v. Bell Security,* 268 A.D.2d 220, 700 N.Y.S.2d 469, 471 (N.Y.App.Div.2000).

■ Superceding events, as opposed to merely intervening ones, may break the causal chain and defeat proximate causation. *See Mason v. U.E.S.S. Leasing Corp.,* 96 N.Y.2d 875, 730 N.Y.S.2d 770, 756 N.E.2d 58, 59 (2001); *McKinnon,* 700 N.Y.S.2d at 471. Superceding events are "extraordinary and unanticipated" occurrences that are unrelated to the breach that initially imperilled the plaintiff. *See McKinnon,* 700 N.Y.S.2d at 471. The criminal acts of third persons may be superceding events, but only if the criminal act was not a foreseeable consequence of the initial breach. *Bell v. Bd. of Educ.,* 90 N.Y.2d 944, 665 N.Y.S.2d 42, 687 N.E.2d 1325, 1327 (1997). Accordingly, for an event to be superceding and to break the causal chain, it generally must be unforeseeable. *See id.; McKinnon,* 700 N.Y.S.2d at 471.

Construing the facts and inferences in the light most favorable to Sawyer, *see Howley,* 217 F.3d at 150–51, Wight's bone shattering haymaker was not an unforeseeable consequence of Marriott's failure to properly supervise the crowd in its lobby. *See Bell,* 665 N.Y.S.2d 42, 687 N.E.2d at 1327. It is not "extraordinary and unanticipated" that an unruly fan in a large crowd of rowdy wrestling enthusiasts might heckle a wrestler, or that the wrestler might react to that heckling with physical violence. *McKinnon,* 700 N.Y.S.2d at 471. Therefore, Wight's act of striking Sawyer was a foreseeable consequence of Marriott's failure to maintain order in its lobby. *See Bell,* 665 N.Y.S.2d 42, 687 N.E.2d at 1327.

Furthermore, construing the facts and inferences in the light most favorable to Sawyer, *Howley,* 217 F.3d at 150–51, summary judgment is inappropriate at this stage because Sawyer has raised a genuine issue of material fact about who was first aggressor. Resolution of that issue could affect the outcome of the case and could permit a reasonable jury to find in either party's favor. *See Nat'l Union Fire Ins. Co. v. Stroh Cos.,* 265 F.3d 97, 103–04 (2d Cir.2001). Accordingly, summary judgment for Marriott on grounds that Wight's actions were superceding is inappropriate.

Finally, summary judgment is also improper at this stage because proximate causation is a jury question. *See McKinnon,* 700 N.Y.S.2d at 471. The Court may not decide proximate causation as a matter of law. *See id.*

### 3. Negligent Crowd Control

Marriott also argues that Sawyer's negligence action is deficient because he neglected to plead that he could not find a safe place in the lobby crowd. That argument fails because it is inapposite to Sawyer's claim.

■ To prove a claim for negligent overcrowding of a confined space, plaintiffs must show inability to move freely or to find safe haven within the crowd. *See Greenberg v. Sterling Doubleday Enters., L.P.,* 240 A.D.2d 702, 660 N.Y.S.2d 33, 34 (N.Y.App.Div.1997); *Palmieri v. Ringling Bros. & Barnum & Bailey Combined Shows,* 237 A.D.2d 589, 655 N.Y.S.2d 646, 646 (N.Y.App.Div.1997); *Hsieh v. New York City Transit Auth.,* 216 A.D.2d 531, 628 N.Y.S.2d 767, 768 (N.Y.App.Div.1995); *Benanti v. Port Auth. of N.Y. & N.J.,* 176 A.D.2d 549, 574 N.Y.S.2d 729, 730 (N.Y.App.Div.1991); *Ryan v. New York,* 7 A.D.2d 298, 182 N.Y.S.2d 616, 617–18 (N.Y.App.Div.1959).

Marriott's reliance on the proposition that Sawyer failed to present facts necessary to prove a negligent overcrowding claim is misplaced. Sawyer's claim is that Marriott failed to maintain order in the lobby crowd; not that Marriott failed to keep that crowd sufficiently small to fit into the lobby. Sawyer's claim properly invokes the duty to protect guests and patrons from foreseeable harms, and summary judgment for Marriott is therefore inappropriate.

## D. Wight's Summary Judgment Motion

Wight moves for summary judgment on grounds that Sawyer's negligence action against him is a means of avoiding the expired one year statute of limitations that applies to intentional torts. The Court grants Wight summary judgment of Sawyer's negligence claim.

### 1. Statutes of Limitations

■ There is a one year statute of limitations for assault and battery claims in New York. N.Y. C.P.L.R. § 215(3) (Consol.2001). New York has a three year statute of limitations for personal injury caused by negligence. *Id.* § 214(5). Statutes of limitations are substantive laws which Federal Courts sitting in diversity must apply. *Quinn v. Teti,* No. 99–9433, 2000 WL 1616806, **1–2, 2000 U.S.App. LEXIS 27210, at *4–5 (2d Cir. Oct. 27, 2000).

### 2. Intentional Torts Pled as Negligence

■ New York does not recognize negligent battery. *Wrase v. Bosco,* 271 A.D.2d 440, 706 N.Y.S.2d 434, 435 (N.Y.App.Div.2000); *Schetzen v. Robotsis,* 273 A.D.2d 220, 709 N.Y.S.2d 193, 194 (N.Y.App.Div.2000); *Wertzberger v. City of New York,* 254 A.D.2d 352, 680 N.Y.S.2d 260, 261 (N.Y.App.Div.1998). Accordingly, "once intentional offensive contact has been established, the actor is liable for ... [battery] and not negligence." *Schetzen,* 709 N.Y.S.2d at 194 (quoting *Wertzberger,* 680 N.Y.S.2d at 261 (internal quotations omitted)); *Wrase,* 706 N.Y.S.2d at 435.

■ Plaintiffs may not plead untimely intentional tort claims as negligence claims to avoid the one year statute of limitations applicable to intentional torts. *Wrase,* 706 N.Y.S.2d at 435; *Schetzen,* 709 N.Y.S.2d at 194; *see Wertzberger,* 680 N.Y.S.2d at 261; *Pistolesi v. Nationwide Mut. Fire Ins. Co.,* 223 A.D.2d 94, 644 N.Y.S.2d 819, 820 (N.Y.App.Div.1996). Therefore, once intentional offensive contact has been established, a one year statute of limitations applies to the action, regardless of how it is pled. *See Wrase,* 706 N.Y.S.2d at 435; *Schetzen,* 709 N.Y.S.2d at 194; *see also Wertzberger,* 680 N.Y.S.2d at 261; *Pistolesi,* 644 N.Y.S.2d at 820.

■ Wight intentionally punched Sawyer on January 16, 1998. (Levine Aff. in Opp. Ex. G; Scher Aff. ¶ 9.) Punching is intentional offensive contact that renders Wight liable for battery and not negligence. *See Wrase,* 706 N.Y.S.2d at 435; *Schetzen,* 709 N.Y.S.2d at 194; *Wertzberger,* 680 N.Y.S.2d at 261. Sawyer's claim is therefore subject to a one year statute

of limitations. *See Wrase,* 706 N.Y.S.2d at 435; *Schetzen,* 709 N.Y.S.2d at 194; *see also Wertzberger,* 680 N.Y.S.2d at 261; *Pistolesi,* 644 N.Y.S.2d at 820. That one year statute of limitations expired on either January 16, 1999 (one year from the date of the incident), or March 10, 2000 (one year from the day Wight was acquitted on the criminal charges). *See* N.Y. C.P.L.R. § 215(3).

Sawyer did not commence the instant action until October 24, 2000. (Scher Aff. Ex. 1.) Accordingly, even if the facts and inferences are construed in Sawyer's favor, *Howley,* 217 F.3d at 150–51, his claim is untimely as a matter of law. *See* N.Y. C.P.L.R. § 215(3); *Wrase,* 706 N.Y.S.2d at 435; *Schetzen,* 709 N.Y.S.2d at 194; *Wertzberger,* 680 N.Y.S.2d at 261. Therefore, because Sawyer failed to prove an element on which he will bear the burden at trial (the timeliness of his claim), *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), Wight is entitled to summary judgment. *See* FED. R. CIV. P. 56.

### E. Sawyer's Cross–Motion for Summary Judgment

Sawyer has cross-moved for summary judgment of Wight's counterclaim for assault and battery on grounds that Wight's counterclaim is time-barred. The Court grants Sawyer summary judgment of Wight's cross-motion.

Under New York law, "claims and defenses that arise out of the same transaction as a claim asserted in the complaint are not barred by the Statute of Limitations, even though an independent action by defendant might have been time-barred at the time the action was commenced." *Bloomfield v. Bloomfield,* 97 N.Y.2d 188, 192–93, 738 N.Y.S.2d 650, 652–53, 764 N.E.2d 950 (2001); *Messinger v. Mount Sinai Med. Ctr.,* 279 A.D.2d 344, 720 N.Y.S.2d 13, 14 (N.Y.App.Div.2001). However, otherwise time-barred counterclaims may only be interposed to offset claims contained in the complaint. N.Y. C.P.L.R. § 203(d) (Consol.2001); *Town of Amherst v. County of Erie,* 247 A.D.2d 869, 668 N.Y.S.2d 848, 849 (N.Y.App.Div.1998).

Wight's counterclaim against Sawyer for assault and battery would be time-barred just as Sawyer's intentional tort claims are. *See* DISCUSSION Sec. D.2. *supra.* Accordingly, Wight's counterclaim may only remain to offset Sawyer's claims against Wight. *See* N.Y. C.P.L.R. § 203(d) (Consol.2001); *Town of Amherst,* 668 N.Y.S.2d at 849.

However, the Court already disposed of Sawyer's claims against Wight. Therefore, there is nothing for Wight's untimely claims to offset, and summary judgment for Sawyer of Wight's counterclaim is granted.

### CONCLUSION

Marriott's motion is DENIED. Both Sawyer's and Wight's motions are GRANTED.

SO ORDERED.