■ GENERALE BANK, Appellant, v BELL SECURITY, INC., Respondent. (And a Third-Party Action.) [741 NYS2d 198] —Order, Supreme Court, New York County (Donna Mills, J.), entered on or about January 19, 2001, which granted defendant's motion to renew a prior order of the same court (Sheila Abdus-Salaam, J.), denying defendant's motion for summary

judgment and, upon renewal, granted defendant's motion and dismissed the complaint, unanimously reversed, on the law, with costs, the motion denied and the complaint reinstated.

Plaintiff Generale Bank is the creditor of third-party defendant Easy Trading, N.V., which owes some $6.6 million secured by a lien on its inventory stored at a Brooklyn warehouse. On July 19, 1994, plaintiff obtained a temporary restraining order preventing Easy Trading or its agents from removing, transferring or otherwise disposing of any inventory subject to the lien.

That same day, counsel for plaintiff sent a letter by facsimile transmission, confirming that "Bell Security will have two security guards watch the warehouse * * * If anyone attempts to remove any inventory from the warehouse, your guards should show them the order of the court" and inform counsel or plaintiff's vice-president of the incident. Plaintiff's attorney included a copy of the temporary restraining order in the transmission. The address listed in the order transposed two digits in the Street number of the warehouse. However, both the letter and the cover sheet state the correct address. Moreover, it is clear that defendant actually did guard the warehouse located at 791 Kent Avenue (not 719) because plaintiff was billed some $60,000 for security services provided to that address over a period of five months.

On November 17, 1994, having obtained an order of seizure, plaintiff bank entered into a stipulation with the debtor permitting the bank to sell the collateral and apply the proceeds to the debt. However, when plaintiff's vice-president gained access to the warehouse, he discovered that "more than three quarters of the inventory had been removed." Plaintiff thereafter settled its action against Easy Trading for $2.82 million, of which approximately $450,000 remains unpaid.

Plaintiff commenced this action in February 1996. In October 1999, defendant brought a motion for an order "[p]ursuant to CPLR 3212, granting summary judgment dismissing the summons and complaint." The moving papers contended that plaintiff could not prove that it sustained any damage as the result of defendant's malfeasance because plaintiff could offer only speculation regarding who stole the inventory and how the items—some 44,000 pieces of crystal and china—were removed from the warehouse. This motion was denied by the first order (Sheila Abdus-Salaam, J.), entered on or about March 28, 2000. The court found issues of fact as to whether defendant was hired to prevent removal of items from the warehouse or merely to guard the front door, as defendant alleges.

In September 2000, defendant submitted its second motion, denominated a motion to dismiss pursuant to CPLR 3211, which also sought renewal of the former CPLR 3212 motion. On September 18, 2000, the parties appeared before Justice Abdus-Salaam, who was engaged in the trial of another matter and who referred this and all other motions to the trial justice. It is apparent that trial began almost immediately because defendant states, "On September 21, 2000, following several days of testimony," the court undertook "to review the motions and determine whether there was a viable cause of action." The court's review culminated in the order appealed from, dismissing the complaint on the ground that "the lack of specificity in the 'letter agreement' and the misstatement of the location of the property in the Temporary Restraining Order annexed to this letter does not create a contract between the plaintiff Generale Bank and the defendant Bell Security." The court concluded, "Without a contractual relationship, or the meeting of the minds, the plaintiff's action fails."

It is abundantly clear that defendant provided security services to plaintiff, that property was removed from the premises secured by defendant and that plaintiff was damaged by the loss of its collateral. Under these facts, having actually undertaken performance, defendant would be prima facie liable to plaintiff for breach of contract even in the absence of a writing. The intervention of third parties is immaterial because such a breach of security is the immediate consequence of the lapse in security with which defendant is charged (*McKinnon v Bell Sec.*, 268 AD2d 220). The extent of the security services defendant was engaged to provide and whether such services encompassed the removal of items by means of access other than the front door merely present questions of fact for resolution at trial.

That plaintiff settled its action against the debtor is material only insofar as the amount of the settlement represents a setoff against the total amount of plaintiff's loss. It is accepted that impairment of collateral subjects a creditor or guarantor to greater liability (*see, Executive Bank v Tighe*, 54 NY2d 330, 337). In this case, plaintiff has been able to recover less than half of the amount owed by the debtor, and the unavailability of collateral securing the debt represents a significant monetary loss. Concur—Mazzarelli, J.P., Andrias, Wallach, Rubin and Marlow, JJ.